Caruthers, J.,
delivered the opinion of the Court.
The complainants, who are merchants of Agusta, Georgia, sold goods to defendant Pardue, who had a *192 Grocery Store in Chattanooga, and onthe 17th February, 1853, took his note for $716.53, the amount then due, at six months. Pardue, on the 1st of August, 1853, sold out to Melville Auchinlick, his entire stock, for upwards of $2,000 on time, and discontinued business. On the 13th May, 1853, Pardue executed a deed of trust to J. W. Webster, for the benefit, of Webster & Palms, wholesale grocers, in Savannah, Upon lot No. 16, on Poplar street, in the city of Chattanooga, on which he then lived. The object and purpose of the deed is thus stated: “I have purchased of Webster & Palms, (merchants,) a stock of goods for $2,500, for which I am indebted to them, and am desirous to secure and make certain the payment of said $2,500; now, if I should pay the said debt within eighteen months from this date, then this deed to be void,” but if notj then the lot to be sold by the trustee on ten days’ notice, to raise the money.
This bill is filed to set aside the said deed, as well as the sale of the groceries to Auchinlick, upon the ground that they were fraudulent sales as to creditors.
There is no proof in the case, but the facts are all agreed upon in the pleadings. The only contest here, is, as to the lot. At the time the deed of trust was made, Webster states in his answer, that Par-due was only indebted to his firm $304, for groceries then, or before purchased. He proposed to secure the amount already due, and secure a further credit with them for other groceries to be ordered, and delivered,-in future, as they might be needed in his business in Chattanooga. The proposition was acceeded to, and from the 3d to the 21st June, the account was enlarged to seventeen or eighteen hundred dollars. Some *193 payments had been made, so that at the filing of the answer the balance due Webster & Palms, as they state, Was $1,406, in three notes; the said note for $304, dated April 29, 1853, and due .in ninety days; one for $1,009, dated June 9, 1853, at four months, for $141.
Now, the first question Upon this state of facts, is, whether this deed of trust is fraudulent, as against the complainant, as a creditor, so as to afford no obstacle to the collection of his debt, by this attachment bill, for the sale of the lot.
The deed sets forth the false and fictitious consideration, calculated to deceive”’1 and deter creditors. It purports to be for^ a debt then due of $2,500, when only $304 were in fact due. It does not provide for future advancements in goods or money, and purports on its face, to be a security for such prospective' debts. If this could be permitted at all, it could only be by spreading the contract upon the deed, so that all having an interest in the matter, could be informed as to the extent of the incumbrance. -One creditor is not allowed to provide security for himself as to future debts and dealings by parol, to the hindrance and delay of other honest creditors. We need not now consider of the question as to how far prospective advances of goods or money may be secured by mortgage, because to raise that question, the case must be expressly set forth in the deed, for it is well settled that a subsequent debt under a parol agreement at the time, or by distinct contract, cannot be looked to, qr embraced' by a mortgage or assignment which is silent in relation thereto. And this last is the case before us. It is agreed that the goods were purchased at the time, to *194 be ordered and delivered in future, and that the debt was therefore then created, and could be well secured. But there was no debt then created. The transaction had none of the elements of the contract. No certain quantity of goods was sold and purchased, no price fixed, no time of delivery or payment designated. They might extend or discontinue their dealings after-wards at pleasure. Neither party was bound to proceed any further. Here, then, was a pretended conveyance of a valuable lot, worth from fifteen hundred to two thousand dollars, to secure the payment of a large debt which the vendor did not owe, and might never owe, when the complainants and other honest creditors were unable to find other property out of which to collect their debts. The statement of the case alone, is sufficient to shew that no law could sustain such a deed, or allow it to obstruct a bb'na fide creditor for a moment, in the pursuit of his debt.
The recital of a fictitious consideration, as the ground of the deed, is evidence of an intention to hinder and delay creditors. Peacock vs. Tompkins, Meigs, 317 to 331; Gibbs vs. Thompson, 7 Humph., 179, and same 310.
The cases referred to in argument, in Johnson’s, Cranch’s, Cowen’s and Peters’ Reports, recognizing the legality of mortgages providing for future debts and advances, will probably all be found to relate to cases where the deeds on their face make such provision expressly. It is not necessary now to say how far we would go with those decisions in a proper case.
There was not, perhaps, any intentional fraud in this case, but it is evidently, for the reasons stated, *195 fraudulent in law, as tending to hinder, delay and defeat creditors.
But according to the case of Peacock vs. Tompkins, before cited, and other cases since decided by this Court, upon the same principle, there being no fraud in fact, or apparent upon the face of the instrument, the deed of trust may be held good as a security for the debt of $304, really due at the time the deed was made. Beyond this, it is fraudulent and inoperative as to other creditors. As to the subsequent debts, the defendants must stand upon the same grounds of the complainants and other creditors, and can enjoy no advantage or preference in consequence of his mortgage.
The property will be sold, and the proceeds first applied to the discharge of the lien of Carter, for the balance of the purchase’ money; next, to the payment of the said sum of $304, less $48.95, which is admitted to have been paid on it by defendants in their answer, with interest, to Webster & Palms, and then to the debt of complainants.
Decree accordingly.